UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60447-Civ-SCOLA

OCEAN VIEW TOWERS
ASSOCIATION, INC.

    Plaintiff,

v.

QBE INSURANCE CORP.,

    Defendant.
_____/

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on the Corrected Motion for Summary Judgment [ECF No. 41], filed by Plaintiff Ocean View Towers Association, Inc. ("Ocean View"), and the Partial Motion for Summary Judgment Regarding "Matching" or "Uniformity" and Replacement Cost Value [ECF No. 33], filed by Defendant QBE Insurance Corporation ("QBE"). The Court has carefully considered the Motions, the parties' arguments, the applicable legal authorities, and is otherwise fully advised in this matter. For the reasons more fully set forth below, the Court concludes that the Motions should be granted in part. Ocean View is entitled to summary judgment as to QBE's second and third affirmative defenses, and QBE is entitled to summary judgment on the issue of "matching" and Replacement Cost Value.

## INTRODUCTION

This case arises from windstorm damage sustained by Ocean View to its condominium towers during Hurricane Wilma in October 2005. The present dispute concerns the extent to which Ocean View's property insurance policy with QBE affords coverage for certain claimed repairs. Ocean View seeks summary judgment as to QBE's second and third affirmative defenses, which respectively concern whether Ocean View materially breached the "Duties In The Event Of Loss Or Damage" provision of the insurance contract and whether it failed to comply with the policy's post-loss requirements. QBE in turn seeks a summary judgment determination that Ocean View is not entitled to coverage for undamaged property in order to

ensure "matching" or "uniformity" after repairs, and also a determination that Ocean View is entitled only to Actual Cash Value ("ACV"), and not Replacement Cost Value ("RCV"), benefits under the policy. Before addressing these issues, the Court will briefly set out the undisputed material facts and the parties' arguments for and against summary judgment.

## STATEMENT OF FACTS

Hurricane Wilma passed through South Florida on October 24, 2005, causing substantial damage to a number of properties throughout the region. Ocean View Towers, a condominium located Hallendale, Florida, was one such property. Ocean View obtained a property insurance policy, which included windstorm coverage, from QBE in 2005. The policy was in effect from May 11, 2005 until May 11, 2006. *See* Plaintiff's Local Rule 7.5(c) Statement of Material Facts [ECF No. 32], at ¶ 5 ("Pl.'s SMF"); QBE's Responses to Plaintiff's Statement of Material Facts [ECF No. 45], at ¶ 5 ("QBE's RSMF").

The insurance contract provided coverage for "direct physical loss of or damage to Covered Property," and imposed upon the insured certain duties in the event of a covered loss. *See* Form CP 00 17 04 02 of the Policy ("Coverage" provision), at 1. Among other things, the insured was required to promptly notify the insurer of any "loss or damage," to allow the insurer to inspect and investigate the premises, and to comply with certain specified requests if made by the insurer. *See id.* In relevant part, the policy provision imposing these obligations states as follows:

**E.   Loss Conditions**

\* \* \*

**3.   Duties In The Event Of Loss Or Damage**

   a.   You must see that the following are done in the event of loss or damage to Covered Property:

   (1)   Notify the police if a law may have been broken.

   (2) Give us prompt notice of the loss or damage. Include a description of the property involved.

   (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

        (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

        (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

        (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

        Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

        (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

        (8) Cooperate with us in the investigation or settlement of the claim.

    b.    We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

*See id.* at 9-10.

With respect to covered losses, the insurance contract provided Ocean View with RCV coverage, subject to certain terms. *See* QBE's Reply in Support of Partial Motion for Summary Judgment [ECF No. 59], at 7 ("QBE's Reply"). The "Replacement Cost" provision states, in relevant part, as follows:

**G.   Optional Coverages**

\* \* \*

**3.   Replacement Cost**

a.   Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

\* \* \*

d.   We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

\* \* \*

f.   The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

\* \* \*

*See* Form CP 00 17 04 02 of the Policy, at 13-14. The "Valuation" provision of the policy, as amended by the "Replacement Cost" provision, stated that the insurer will pay for "[g]lass at the cost of replacement with safety glazing material if required by law," notwithstanding the no-increased-cost-due-to-ordinance-or-law language above. *See id.* at 11.

Between October 25 and October 29, 2005, Ocean View notified QBE of damages sustained to the property during Hurricane Wilma. *See* Pl.'s SMF ¶ 14; QBE's RSMF ¶ 14. The loss notice identified roof, building, and glass damage to the condominium. *See* Pl.'s SMF ¶ 15;

QBE's RSMF ¶ 15.  Thereafter, QBE's agent retained Robert Sansone of Interloss, Inc., an independent insurance adjusting firm representing insurance carriers, to investigate and to ascertain the damage from the storm.  *See* Pl.'s SMF ¶ 23; QBE's RSMF ¶ 23.  Adjusters such as Sansone, who are retained by QBE to investigate a hurricane loss, are trained to recognize typical damage resulting from a windstorm event.  *See* Pl.'s SMF ¶ 27; QBE's RSMF ¶ 27.  Accordingly, Sansone was instructed that he should inspect for evidence of physical damage that may have been caused by the hurricane, regardless of whether the damage is identified, or pointed out, by the insured.  *See* Pl.'s SMF ¶ 26; QBE's RSMF ¶ 26; O'Brien Dep. at 46-47.

Ocean View cooperated with QBE and its agents in their investigation of the loss and the claim.  *See* Pl.'s SMF ¶¶ 39-52; QBE's RSMF ¶¶ 39-52.[1]  Neither Sansone nor QBE ever requested or were denied a specific inventory of the claimed damages, the opportunity to inspect or investigate the premises or Ocean View's books and records, or the opportunity to take sworn statements from any insured relating to the loss or damage from Hurricane Wilma.  *See* Pl.'s SMF ¶¶ 46-49; QBE's RSMF ¶¶ 46-49.  Sansone described the particular damage as concerning the roof, fire alarm system, cooling tower, pool pump, roof door, and stucco on the exterior walls of the building.  *See* Pl.'s SMF ¶ 31; QBE's RSMF ¶ 31.  On November 2, 2005 and April 25, 2006, Sansone completed his investigation and estimated the amount of the Ocean View loss at $396,312.09.  *See* Pl.'s SMF ¶ 29; QBE's RSMF ¶¶ 29, 54; Plaintiff's Response to QBE's Statement of Additional Material Facts [ECF No. 56], at ¶ 54 ("Pl.'s RSAMF").  This estimate was based primarily upon invoices provided by Ocean View.  *See* Pl.'s SMF ¶ 29; QBE's RSMF ¶ 29.  In June 2006, consistent with Sansone's investigation, QBE issued payment to Ocean View on a RCV basis in the amount of $125,312.09, which accounted for the $396,312.09 estimate minus Ocean View's deductible.  *See* Pl.'s SMF ¶ 32; QBE's RSMF ¶ 32.

---

[1] This District's Local Rule 56.1(b) requires the movant's facts to be controverted by reference to record evidence.  Thus, where QBE has responded to Ocean View's Statement of Material Facts by merely asserting that "QBE denies Paragraph [ ] as phrased," without citing any record evidence to create a genuine issue of material fact, the Court has deemed such facts admitted.  This result is consistent with the Supreme Court's directive that the nonmoving party cannot rest on its laurels with "mere allegations or denials," but instead must "go beyond the pleadings and present competent evidence designating specific facts showing that there is a genuine issue for trial."  *See United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  QBE's "conclusory assertions" will not do.  *Maddox-Jones v. Board of Regents of Univ. of Georgia*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011).

Nearly four years later, in March 2010, Ocean View retained Dietz International ("Dietz") to perform an inspection of the property. *See* QBE's RSMF ¶ 61; Pl.'s RSAMF ¶ 61. An adjuster from Dietz had been working on a neighboring property and noticed certain items at Ocean View that were indicative of damage from the hurricane. *See* QBE's RSMF ¶¶ 59-60; Pl.'s RSAMF ¶¶ 59-60. Accordingly, Dietz offered to inspect the condominium in exchange for a share of any additional insurance proceeds recovered, and Ocean View agreed. *See* QBE's RSMF ¶¶ 60-61; Pl.'s RSAMF ¶¶ 60-61. Dietz retained Paul Norcia, who prepared an estimate of the damage in June 2010. *See* QBE's RSMF ¶ 62; Pl.'s RSAMF ¶ 62. According to Norcia's report, the amount of damage attributable to the Hurricane Wilma loss was $5,329,180.38 (RCV) or $4,139,757.42 (ACV). *See* QBE's RSMF ¶ 62; Pl.'s RSAMF ¶ 62. Approximately $514,000.00 of this claimed damage relates to repairs that would ensure "matching" or "uniformity." *See* QBE's Statement of Undisputed Material Facts in Support of its Partial Motion for Summary Judgment [ECF No. 33], at ¶ 8 ("QBE's SMF").

After discovering the additional alleged damages to the property, Ocean View did not submit a supplemental claim for coverage to QBE, nor did it even notify QBE of the additional claimed damages. *See* Pl.'s SMF ¶ 42; QBE's RSMF ¶¶ 33-42. Instead, on October 15, 2010, Ocean View filed suit against QBE in state court for breach of the insurance contract based upon QBE's alleged failure to properly cover damages stemming from the Hurricane Wilma loss. *See* Pl.'s SMF ¶ 42; QBE's RSMF ¶¶ 33-42. On March 1, 2011, after answering the Complaint and asserting certain affirmative defenses, QBE removed this action to federal court based upon diversity of citizenship jurisdiction under 28 U.S.C. § 1332. *See* Pl.'s SMF ¶ 44; QBE's RSMF ¶ 44. The parties have now crossed moved for summary judgment.

## SUMMARY JUDGMENT MOTIONS

### I.     Ocean View's Summary Judgment Motion

Ocean View has moved for summary judgment as to certain of QBE's affirmative defenses.[2] *See* Ocean View's Corrected Motion for Summary Judgment [ECF No. 41], at 4-15 ("Pl.'s Mot."). QBE's second affirmative defense is that recovery under the insurance contract is

---

[2] Ocean View's request for summary judgment as to QBE's first affirmative defense is now moot in light of QBE's withdrawal of that defense. *See Halifax Paving, Inc. v. U.S. Fire Ins. Co.*, 481 F. Supp. 2d 1331, 1333 (M.D. Fla. 2007).

barred by Ocean View's failure to adhere to the requirements of the "Duties In The Event Of Loss Or Damage" provision. QBE maintains that:

> [Ocean View] has materially breached the insurance contract, thereby relieving QBE of any obligation under the policy by failing to provide timely notice of its claim, failing to take all steps necessary to protect the Covered Property from further damage, keeping an accurate record of all repairs and expenses, failing to permit QBE to inspect the property as often as may reasonably be required, [and] failing to permit QBE to examine and inspect all of the claimed damages as often as may reasonably be required. As a result, any recovery is barred.

*See* QBE's Answer/Affirmative Defenses, at 4. In its Motion, Ocean View argues that summary judgment on this defense is appropriate because Ocean View indisputably notified QBE of the Hurricane Wilma loss between October 25 and October 29, 2005, it kept an accurate record of all repairs and expenses following the loss, and QBE waived the right to insist upon Ocean View's compliance with post-loss duties by failing to further investigate and by issuing payment following its inspection and coverage determination. *See* Pl.'s Mot. at 5-14. Ocean View notes that QBE did not make any post-loss demands that Ocean View failed to answer, either at the time of the windstorm loss or at any time prior to its bringing suit.

QBE responds that a material factual dispute concerning the circumstances and timing of Ocean View's notice precludes summary judgment as to the second affirmative defense. *See* QBE's Response to Ocean View's Motion for Summary Judgment [ECF No. 45], at 10-12 ("QBE's Resp."). According to QBE, the issue of Ocean View's compliance with the notice provisions of the policy is for the jury to determine. Notwithstanding Ocean View's initial notice to QBE of the hurricane loss in October 2005, QBE contends that timely notice is in dispute because Ocean View failed to notify QBE, before filing suit, of the additional damages discovered in 2010. QBE further argues that it was unable to perform a proper investigation of the insured's additional claims because the damages were not brought to its attention before this lawsuit was instituted. Finally, QBE insists that it did not waive any of its rights under the policy because it did not have knowledge of all material facts and, therefore, could not knowingly or voluntarily relinquish any such rights. *See* QBE's Resp. at 12-14. Thus, QBE argues, "there is a genuine issue of material fact as to whether [Ocean View's] conduct interfered with QBE's ability to investigate the loss, and should therefore be considered by the trier of fact." *Id.* at 16.

In reply, Ocean View stresses that it promptly notified QBE of the windstorm loss following Hurricane Wilma and that it provided a reasonably particular description of the alleged damages to the condominium. *See* Ocean View's Reply in Support of Summary Judgment [ECF No. 57], at 2-6 ("Pl.'s Reply"). Ocean View contends the policy did not require it to do anything more. Under the policy, the insured need not, according to Ocean View, give notice before filing suit of all damages it intends to claim. Ocean View argues that QBE never availed itself of the proof of loss procedures available to it in that QBE never requested a sworn statement pertaining to the detailed losses from the storm, nor did it exercise its right to more extensively inspect the property or request additional information from the insured. Consequently, Ocean View insists it should be granted summary judgment as to the issue of compliance with post-loss duties.

Ocean View also seeks summary judgment as to QBE's third affirmative defense, which concerns what an insured must do in order to maintain suit against the insurer. *See* Pl.'s Mot. at 14-15. The policy provides that no insured may bring suit against QBE unless the insured has fully complied with the policy's coverage terms. In its third affirmative defense based on this provision, QBE asserts that:

> Plaintiff has failed to comply with all of its contractual obligations under the policy, including but not limited to, failure to provide timely notice of its claim, failing to take all steps necessary to protect the Covered Property from further damage, keeping an accurate record of all repairs and expenses, failing to permit QBE to inspect the property as often as may reasonably be required, failing to permit QBE to examine and inspect all of the claimed damages as often as may reasonably be required prior to filing the instant action. As such, Plaintiff has not complied with all terms of the policy and, thus, the instant Complaint is premature.

*See* QBE's Answer/Affirmative Defenses, at 5. Here again, QBE is insisting that Ocean View may not recover under the policy because it did not, prior to filing suit, notify QBE of the additional claimed damages and failed to permit QBE an opportunity to investigate such additional damages. On summary judgment, Ocean View argues that, for the reasons above, it did all that the insurance contract required of it in notifying QBE of the loss following the windstorm and permitting QBE an opportunity to inspect the premises and request any additional information as may have been required to process the claim. *See* Pl.'s Mot. at 14. No requests were made of Ocean View, it argues, so QBE cannot now argue that Ocean View failed in any of its contractual duties. Further, Ocean View asserts that QBE cannot be heard to complain that this litigation is premature when it never sought a stay or abatement of this action to force

compliance with any outstanding post-loss duties and to permit it an opportunity to investigate the additional claimed damages.

QBE responds that summary judgment is precluded by factual issues as to whether Ocean View fully complied with its post-loss duties before filing suit. *See* QBE's Resp. at 16-17. QBE further argues that it had no duty to seek a stay or abatement of this action in order to demand Ocean View's compliance. In reply, Ocean View asserts that QBE is attempting to use the policy as both a "sword and shield" in order to defeat recovery. *See* Pl.'s Reply at 8-9. It again emphasizes that QBE could have, but did not, request a stay of the litigation.

## II. QBE's Summary Judgment Motion

QBE has moved for a summary judgment determination that Ocean View is not entitled to coverage to ensure "matching" or "uniformity" in repairs and replacements. *See* QBE's Partial Motion for Summary Judgment [ECF No. 33], at 5-7 ("QBE's Mot."). "Matching" and "uniformity" in the property insurance industry are directed to situations in which replacements to physically damaged materials do not match the existing undamaged materials. QBE argues that the policy provides coverage only for "direct physical loss or damage" and does not cover the replacement of undamaged property in order to ensure "matching" or "uniformity." QBE points out that no Florida statute requires this of the insurer, except in the case of homeowner's policies. Ocean View's policy is a commercial residential insurance contract, not a homeowner's policy.

In response, Ocean View argues that the policy does not specifically address the issue of "matching" and that QBE's corporate representative, Timothy O'Brien, testified during deposition that QBE's custom and practice is to pay for "matching" in some situations. *See* Ocean View's Response to Partial Motion for Summary Judgment [ECF No. 43], at 3-14. Ocean View also points to the fourth prong of the "Loss Payment" provision, which provides that QBE may, at its option, repair or replace with "property of like kind and quality." According to Ocean View, this "matching" provision should not be limited to situations in which the insurer opts to repair the property itself, but logically should be extended to cover situations in which the insurer elects to pay the cost of the repairs as well, given that the insured will want to create a matched and uniform appearance when conducting its own repairs. Further, Ocean View contends that the policy should be interpreted in light of industry usage and custom, which recognizes that "matching" is appropriate under some circumstances as a matter of indemnity.

In reply, QBE again emphasizes that the policy only provides coverage for actual loss or damage, not for "matching."  *See* QBE's Reply at 2-5.  QBE argues that the "Loss Payment" provision does not provide otherwise; it obligates the insurer to use materials "of like kind and quality" only where the insurer opts to repair or replace the damaged property itself.  QBE did not make that election here.  Further, QBE contends that Ocean View may not rewrite the policy's terms by reference to purported industry custom or inapplicable case law.

The second portion of QBE's summary judgment motion concerns whether Ocean View is entitled to coverage based upon RCV versus ACV.  *See* QBE's Mot. at 7-9.  QBE argues that Ocean View may not obtain RCV benefits here because Ocean View has not repaired or replaced the allegedly damaged items.  According to QBE, the insurance contract in this case provides RCV coverage only after "the lost or damaged property is actually repaired or replaced," and even then only if "the repairs or replacement[s] are made as soon as reasonably possible after the loss or damage."

Ocean View responds that QBE paid its initial claim on a RCV basis in June 2006 even though no repairs had been made by the insured and, accordingly, QBE must pay on that basis now.  *See* Pl.'s Resp. at 14-17.  Ocean View insists that because "it is QBE's practice to pay for replacement cost benefits up front if the damaged item needs to be repaired/replaced," it must do so with regard to Ocean View's additional claims of damage.  *See id.* at 15.  According to Ocean View, under these circumstances QBE has waived its right to require the insured's strict compliance with the policy.  Ocean View also argues in the alternative that even if recovery is limited to ACV benefits, QBE is required under the "Valuation" provision of the policy to cover the cost of replacing glass with safety glazing material as required by law. Ocean View contends that in hurricane zones such as Broward County, windows and doors must be replaced with "impact rated" glass, which may require windows and doors containing safety glazing material.  Ocean View asserts that there is at least a genuine issue of fact as to whether that is the case here.

QBE replies that insurance coverage cannot be expanded via waiver or estoppel.  *See* QBE's Reply at 6-9.  QBE also maintains that, under the policy's plain terms, where an insured has not elected to make the repairs, coverage is provided on an ACV, as opposed to RCV, basis.  Moreover, as to Ocean View's safety glazing argument, QBE points out that the "Replacement Cost" provision of the policy does not provide coverage for any additional costs of repair or replacement attributable to requirements imposed by law or ordinance.  Further, QBE

argues, the federal provisions requiring safety glazing on glass make clear that safety glazing glass is not the same as high wind impact resistant glass and that safety glazing is designed for another purpose entirely – namely, as the federal regulations state, to reduce or eliminate unreasonable risks of injury or death when glass is broken by human contact, not by high winds. Thus, according to QBE, the policy's reference to safety glazing glass does not apply to require coverage on a RCV basis where Ocean View has not yet undertaken the repairs.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "Summary judgment is particularly suited to cases of insurance coverage because the interpretation of a written contract is a matter of law to be decided by the court." *Int'l Ship Repair & Marine Servs., Inc. v. N. Assur. Co. of Am.*, 2011 WL 5877505, at *4 (M.D. Fla. Nov. 23, 2011).

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [ ] must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586. "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Board of Regents of Univ. of Georgia*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011).

## **LEGAL ANALYSIS**

Upon careful consideration, the Court finds that Ocean View is entitled to summary judgment on QBE's second and third affirmative defenses. The Court also finds that QBE is entitled to summary judgment as to the principle of "matching," as well as to the issue of RCV. Below, each issue is addressed in turn.

### I.      QBE's Second Affirmative Defense

Ocean View is entitled to summary judgment as to QBE's second affirmative defense because, under the plain language of the policy, Ocean View fully complied with the "Duties In The Event Of Loss Or Damage" provision. Under Florida law,[3] "insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). "Where the policy language is plain and unambiguous, no special rule of construction or interpretation applies, and the court should give the plain language in the contract the meaning it clearly expresses." *N. Pointe Cas. Ins. Co. v. M & S Tractor Servs., Inc.*, 62 So. 3d 1281, 1282 (Fla. 2d DCA 2011). "Courts are not free to rewrite an insurance policy or to add terms or meaning to it." *Royal Ins. Co. v. Latin Am. Aviation Servs., Inc.*, 210 F.3d 1348, 1351 (11th Cir. 2000); *see also Heritage Ins. Co. of Am. v. Cilano*, 433 So. 2d 1334, 1335 (Fla. 4th DCA 1983) ("When the terms of an insurance policy are clear and unambiguous the terms must be applied as written, the court not being free to reshape the agreement of the parties.").

Here, QBE argues that Ocean View failed to notify it of the additional claimed damages prior to filing suit and that there is at least an issue of fact as to whether Ocean View provided prompt notice to the insurer of the claimed damages. The Court finds Ocean View did all that the policy demanded of it. The insurance contract, in the "Duties In The Event Of Loss Or Damage" provision, required Ocean View to provide QBE "prompt notice" of any "loss or damage" and to "[i]nclude a description of the property involved." *See* Form CP 00 17 04 02 of the Policy, at 9. Ocean View complied. Indeed, it is undisputed that Ocean View contacted QBE between October 25 and 29, 2005 to notify the insurance company of its "loss" from

---

[3] Because this Court sits in diversity in this case, it must apply the law of the forum state, which is Florida. *See Living Legends Ret. Ctr., Inc. v. Lexington Ins. Co.*, 208 F. App'x 805, 807 (11th Cir. 2006) ("The district court ruling in this case turned on the interpretation of an insurance contract. Since the court was sitting in diversity, it applied the law of the forum state, Florida.").

Hurricane Wilma, which descended on South Florida on October 24, 2005. Further, it is undisputed that Ocean View's loss notice identified roof, building, and glass damage to the condominium.

Upon receiving this information, the "Duties In The Event Of Loss Or Damage" provision entitled QBE to fully investigate and to make a host of demands upon Ocean View. QBE could have requested of Ocean View "complete inventories of the damaged and undamaged property," including "quantities, costs, values and amount of loss claimed." *See* Form CP 00 17 04 02 of the Policy, at 9. QBE could have requested of Ocean View an opportunity "to inspect the property proving the loss or damage and examine [its] books and records" and also "to take samples of damaged and undamaged property for inspection, testing and analysis, and . . . to make copies from [its] books and records." *See id.* at 10. QBE could have requested of Ocean View "a signed, sworn proof of loss containing the information we request to investigate the claim." *See id.* And, QBE could have requested of Ocean View the opportunity to "examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records." *See id.*

Sansone inspected the property on November 2, 2005 and April 25, 2006, but QBE made no requests for more particularized inventories of damages. Nor did it ask to further inspect the premises or to review Ocean View's books and records. Nor did it ask to obtain any signed statements or to examine any insured under oath. Indeed, no such requests were outstanding at any time before Ocean View filed suit. *See* Pl.'s SMF ¶¶ 45-52; QBE's RSMF ¶¶ 45-52.

In short, the policy required Ocean View to provide prompt notice of the "loss or damage." It did so by informing QBE of the Hurricane Wilma "loss." The insurance contract required no more. QBE had a full and fair opportunity to investigate the damage from the windstorm loss and to request additional information from Ocean View, but failed to fully do so. *See* Pl.'s SMF ¶¶ 45-52; QBE's RSMF ¶¶ 45-52. Absent such, Ocean View was under no obligation to give QBE notice of the additional claimed damages before filing suit. While it may not make sense to QBE that an insured can submit notice of a loss, receive payment for claimed damages, and then years later run into court claiming millions of dollars in additional damages, that is not this Court's concern. *See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1139 (Fla. 1998) ("As a court, we cannot place limitations upon the plain

language of a policy [ ] simply because we may think it should have been written that way."); *see also Green v. Life & Health of Am.*, 704 So. 2d 1386, 1391 (Fla. 1998) ("parties are free to contract even though either side may get what turns out to be a 'bad bargain,'" and a court may not "substitute [its] judgment for that of parties to the contract in order to relieve one of the parties from apparent hardships of an improvident bargain") (citation omitted). This Court is obliged to enforce the plain policy language as written. *See Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 473 (Fla. 1993) (court cannot "judicially rewrite an insured's policy," as "contracts of insurance must be construed by resorting to the plain language of the policies as freely bargained for by the parties"). Therefore, the Court must grant Ocean View's motion of summary judgment as to QBE's second affirmative defense.

## II. QBE's Third Affirmative Defense

For like reasons, Ocean View is also entitled to summary judgment as to QBE's third affirmative defense. The policy provides that no insured may bring suit against QBE unless the insured has fully complied with the policy's coverage terms. *See* Form CP 00 90 07 88 of the Policy, at 1. In its third affirmative defense based on this provision, QBE contends that Ocean View may not recover under the policy because it did not, prior to filing suit, notify QBE of the additional claimed damages and failed to permit QBE an opportunity to investigate such additional damages. Thus, again, QBE is arguing that Ocean View failed to comply with the "Duties In The Event Of Loss Or Damage" provision. For the reasons stated above, however, the Court has already rejected this argument based on the policy's plain language as applied to the undisputed facts. QBE points to no other policy provision with which Ocean View allegedly failed to comply. Accordingly, the third affirmative defense fails and Ocean View is entitled to summary judgment.

## III. Policy Coverage for "Matching" or "Uniformity"

On this issue, summary judgment for QBE is required because the plain language of the policy does not afford coverage to ensure "matching" or "uniformity" in repairs. In reaching this conclusion, the Court follows the reasoning of *Strasser v. Nationwide Mutual Insurance Company*, 2010 WL 667945, at *1 (S.D. Fla. Feb. 22, 2010). In *Strasser*, the district court considered analogous policy language and found that the insurer did not have a duty to match under the insurance policy. *See id.*

Here, QBE argues that the policy provides coverage only for "direct physical loss or damage" and does not cover the replacement of undamaged property to ensure "matching." The Court agrees. *See* Form CP 00 17 04 02 of the Policy, at 1. In fact, the policy makes no mention of "matching" at all. The closest it comes is in the "Loss Payment" provision, which obligates the insurer to use materials "of like kind and quality" – but only where the insurer opts to repair or replace the damaged property itself. *See id.* at 10. QBE did not make that election here.

Moreover, as QBE emphasizes, no Florida statute requires the insurer to provide coverage for "matching," except in the case of homeowner's policies. *See Strasser*, 2010 WL 667945, at *1 (observing that Fla. Stat. § 626.9744 applies only to homeowner's policies). Ocean View's policy here is a commercial residential insurance contract, not a homeowner's policy. *See, e.g.*, Form CP 00 17 04 02 of the Policy, at 1 (identifying coverage for "**COMMERCIAL PROPERTY**"). Therefore, the statute does not apply. *See Strasser*, 2010 WL 667945, at *1. Absent any controlling provision of law directing otherwise, then, the Court must once again follow the policy's clear language, which does not cover "matching."

Nevertheless, Ocean View contends that the optional "matching" directive in the "Loss Payment" provision should not be limited to situations in which the insurer elects to repair the property itself, but logically should be extended to cover situations in which the insurer chooses to pay the cost of the repairs as well, given that the insured will want to create a matched and uniform appearance when conducting its own repairs. Further, Ocean View contends that the policy should be interpreted in light of industry usage and custom, which recognizes that "matching" is appropriate under some circumstances as a matter of indemnity.[4] The Court

---

[4] As a matter of industry custom and practice, estimates may include coverage for "matching" with regard to "[a]ny continuous run of an item or adjoining area" where materials such as painting, wallpapering, siding, carpeting, and roof tiles are involved. *See* Sansone Dep. at 65-66; QBE's Reply at 5. In granting summary judgment here, the Court does not hold that "matching" is ***never*** appropriate. To the contrary, the Court merely holds that the unambiguous language of this insurance policy does not ***require*** it in all circumstances. In this regard, the Court emphasizes that "the parties to an agreement are bound by the contract into which they enter, not according to the contractual obligations of others." *Shaw v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 605 F.3d 1250, 1255-56 (11th Cir. 2010). And, "[a]lthough Florida law permits [the Court] to 'consider established custom and usage in the insurance industry,' [the Court] will not make the parties to one contract abide by the terms of another." *See id.* (citation omitted). Nevertheless, QBE should ensure coverage for "matching" consistent with standard industry practice where repairs concern "any continuous run of an item or adjoining area" for materials such as painting, wallpapering, siding, carpeting, and roof tiles.

rejects these arguments. Both arguments invite the Court to do violence to the policy's plain terms. This Court declines. Accordingly, summary judgment on the issue of "matching" shall be rendered in favor of QBE.

### IV.     Replacement Cost Value Coverage

QBE is entitled to summary judgment on this issue because the insurance contract does not require it to provide coverage on a RCV basis. As QBE correctly argues, the policy plainly provides RCV coverage only after "the lost or damaged property is actually repaired or replaced," and even then only if "the repairs or replacement[s] are made as soon as reasonably possible after the loss or damage." *See* Form CP 00 17 04 02 of the Policy, at 14. Here, the repairs have yet to occur; therefore, the policy does not afford RCV coverage.[5] Again, where the policy is plain, the Court cannot rewrite it.

Ocean View contends, however, that QBE has waived its right to require strict compliance with the policy's terms because QBE previously paid on a RCV basis in June 2006 and "it is QBE's practice to pay for replacement cost benefits up front if the damaged item needs to be repaired/replaced." *See* Pl.'s Resp. at 15. This argument lacks merit. In Florida, the law is clear that coverage may not be expanded through waiver or estoppel. *See, e.g., Lloyds Underwriters at London v. Keystone Equip. Fin. Corp.*, 25 So. 3d 89, 92 (Fla. 4th DCA 2009) ("Florida law holds that the doctrines of estoppel and waiver cannot be applied to create or extend insurance coverage.").

Ocean View also argues in the alternative that if recovery is limited to ACV benefits, QBE is required under the "Valuation" provision of the policy to cover the cost of replacing glass with safety glazing material as required by law. The Court is not persuaded by this argument either. The "Replacement Cost" provision of the policy plainly states that "[t]he cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property." *See* Form CP 00 17 04 02 of the Policy, at 14. Moreover, the relevant provisions of federal law make clear that safety glazing glass is not the same as high wind impact resistant glass, and that safety glazing is designed for another purpose entirely – namely, as the federal regulations state, to "reduce or eliminate unreasonable risks of death or serious injury to consumers when glazing material is

---

[5] To the extent there are covered damages to the roof that have already been the subject of repairs, QBE obviously would be required to provide RCV benefits for those repairs.

broken *by human contact*." *See* 16 C.F.R. § 1201.1(a) (emphasis supplied). Thus, the policy's reference to safety glazing glass does not require QBE to cover the cost of high wind impact resistant glass here. Accordingly, the Court will enter summary judgment in favor of QBE on the RCV issue.

## CONCLUSION

As explained above, the Court concludes that Ocean View is entitled to summary judgment on QBE's second and third affirmative defenses, and QBE is entitled to summary judgment on the issues of "matching" and RCV. Accordingly, it is hereby **ORDERED and ADJUDGED** that Ocean View's Corrected Motion for Summary Judgment [ECF No. 41] and QBE's Partial Motion for Summary Judgment Regarding "Matching" or "Uniformity" and Replacement Cost Value [ECF No. 33] are **GRANTED IN PART**.

**DONE and ORDERED** in chambers at Miami, Florida on December 22, 2011.

_____
**ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE**

*Copies to:*
Counsel of record